UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

STEPHEN AND ALEXANDRIA SCANLAN,
INDIVIDUALLY AND AS
ADMINISTRATORS OF THE ESTATE OF
SAWYER SCANLAN                                                                  PLAINTIFFS

v.                                                                   CIVIL ACTION NO. 3:12-CV-00009-CRS

SUNBEAM PRODUCTS, INC. D/B/A
JARDEN CONSUMER SOLUTIONS                                                        DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the objection of defendant Sunbeam Products, Inc. ("Sunbeam") to Magistrate Judge Dave Whalin's order denying Sunbeam's motions to exclude Mark Lehto, Ph.D., Michael Wogalter, Ph.D., William Murphy, Ph.D., and Sara Ford as expert witnesses. ECF Nos. 112, 110. Plaintiffs Stephen and Alexandria Scanlan ("the Scanlans") responded. ECF No. 124. For the reasons set forth below, Sunbeam's objection will be overruled.

I. Case Background

This case arises from the tragic death of two-year-old Sawyer Scanlan from heatstroke. On December 15, 2010, Stephen Scanlan put his son, Sawyer, to bed in his crib at approximately 9:00 p.m. ECF No. 88-3, p. 7. Stephen turned on the Sunbeam Fan-Forced Heater, Model No. SFH111 ("space heater" or "SFH111") and turned the thermostat dial to mid-range. *Id.* at 23. He then left the room and shut the door behind him. *Id.* at 36. Although Sawyer's mother, Alexandria Scanlan, woke up several times during the night to feed Sawyer's infant sister, she

1

did not check on Sawyer because she did not hear any noise coming from his room and assumed he was sleeping. ECF No. 85-4, p. 58.

At approximately 10:00 a.m. the following morning, Alexandria went to Sawyer's room to wake him. *Id.* at 66-67. When she opened the bedroom door, she felt a burst of hot air and found Sawyer lying in his crib, unresponsive. *Id.* at 70-71. An EMS official pronounced Sawyer dead at the scene. The medical examiner concluded that "The death of this 2 ½ year-old male child . . . is attributed to heat exposure due to confinement in a small room with an electric space heater." ECF No. 52-7.

On December 7, 2011, the Scanlans filed suit against Sunbeam in Jefferson Circuit Court, alleging strict liability, negligence, breach of warranty, violations of the Kentucky Consumer Protection Act, and violations of the Magnuson-Moss Warranty Act.[1] ECF No. 1-1, p. 5. The case was then removed to this court. *Id.* at 1. The Scanlans disclosed several experts they plan to call as witnesses at trial. These expert witnesses include: Mark Lehto, Phd., a professor of engineering at Purdue University; Michael Wogalter, Ph.D., a human factors specialist and professor emeritus at North Carolina State University; William Murphy, Ph.D., a professor of engineering at the University of Kentucky; and Sara Ford, a vocational economist. ECF No. 52. Sunbeam filed motions to exclude these four witnesses, arguing that they do not satisfy the requirements for expert witnesses under Federal Rule of Evidence (FRE) 702. ECF Nos. 85-88.

These motions were referred to Judge Whalin for resolution. Judge Whalin subsequently issued an order denying Sunbeam's motions to exclude the testimony of Lehto, Wogalter, Murphy, and Ford. ECF No. 110. Sunbeam now objects to Judge Whalin's order under Federal Rule of Civil Procedure 72(a).

---

[1] Only the strict liability and negligence claims based on the theories of 'design defect' and 'failure to warn' remain. ECF Nos. 113, 119.

2

## II. Legal Standard

Under Federal Rule of Civil Procedure 72(a), a party may file an objection to a magistrate judge's order within fourteen days of being served with a copy. Upon review, a district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." *Id.* Clear error exists "when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Max Trucking, LLC v. Liberty Mut. Ins. Corp.*, 802 F.3d 793, 810 (6th Cir. 2015) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

Sunbeam challenges Judge Whalin's order denying its motions to exclude Lehto, Wogalter, Murphy, and Ford as expert witnesses. FRE 702 governs the admissibility of expert witness testimony. This rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Thus, trial judges serve as "gatekeepers" to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court suggested several factors that could be used in assessing the reliability of an expert's opinion, including (1) "whether it can be or has been tested;" (2) "whether [it] . . . has been subject to peer review and publication;" (3) whether there is a "known or potential rate of error'" and (4) whether it enjoys "general acceptance . . . in the

relevant scientific community." *Id.* at 594. However, the Court emphasized that this inquiry "is a flexible one," and considerations may vary based on the subject matter of the case. *Id.* Notwithstanding this flexibility, the role of a trial judge is to assess the "principles and methodology" used by experts, not the conclusions they ultimately reach. *Id.* at 595.

In assessing relevance, the ultimate question is whether the expert's opinions "fit" the facts of the case. *Id.* at 591. "[S]cientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id.*

### III. Discussion

Sunbeam objects to Judge Whalin's order denying its motions to exclude Lehto, Wogalter, Murphy, and Ford as expert witnesses. According to Sunbeam, these individuals do not satisfy the requirements of FRE 702. Sunbeam's specific objections are discussed in further detail below.

A. Whether Lehto and Murphy's Opinions Regarding Defective Design Will Assist the Trier of Fact

First, Sunbeam argues that Judge Whalin erred in concluding that Lehto and Murphy's opinions regarding the defective design of the SFH111 would assist the trier of fact. The manufacturer contends that under Kentucky law, a product is defectively designed only when "an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market." ECF No. 112, p. 3. Sunbeam claims that Lehto and Murphy failed to "evaluate, compare, or examine the design of competitor heater models in the marketplace in reaching their opinions in this case." *Id.* Rather, their opinions "are all grounded on the consumer's expectation as to the SFH111" and "the feasibility of an alternative design." *Id.* Because of this, Sunbeam contends that Lehto and Murphy's opinions "fail to address the fact at issue" and are therefore not helpful to the trier of fact. *Id.* at 5.

4

While Sunbeam is correct that the standard for a design defect is whether "an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market," comparison to industry standards is only one relevant factor in this analysis. *Nichols v. Union Underwear Co.*, 602 S.W. 2d 429, 443 (Ky. 1980). Other relevant factors include consumer expectations, "the feasibility of making a safer product, [the] patency of the danger, [the] warnings and instructions . . . and the product's inherently unsafe characteristics." *Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 780-81 (Ky. 1980); *See also Nichols*, 602 S.W.2d at 443. Because Lehto and Murphy's opinions touch on some of these factors, they are relevant in determining whether an ordinarily prudent space heater manufacturer would have put the SFH111 on the market.[2] Thus, Judge Whalin did not err in finding that Lehto and Murphy's opinions would assist the trier of fact.

B. <u>Whether Lehto, Wogalter, and Murphy's Opinions Regarding Defective Warnings and Human Factors are Sufficient Under FRE 702</u>

Second, Sunbeam argues that Judge Whalin erred in finding that Lehto, Wogalter, and Murphy's opinions regarding defective warnings and human factors satisfy FRE 702. Specifically, Sunbeam claims that these opinions are unreliable. The manufacturer contends that although these witnesses are "indisputably qualified in their respective fields, [they] have insufficient backgrounds, experience and training to set forth opinions with respect to the subject SFH111 fan heater." ECF No. 112, p. 6. Sunbeam also states that their opinions are based on insufficient facts and data. *Id.*

---

[2] Sunbeam cites *Fritz v. Campbell Hausfeld/Scott Fetzer Co.*, 2007 WL 1558509 (E.D. Ky. May 29, 2007) in support of its argument that Lehto and Murphy's opinions are not helpful in determining the facts at issue in this case. However, *Fritz v. Campbell* involves a motion for summary judgment where the plaintiff's sole expert based his opinions entirely on the feasibility of an alternative design. The summary judgment standard is distinct from the FRE 702 standard. To the extent that *Fritz* suggests in dicta that the plaintiff's expert may not satisfy the requirements of FRE 702, this is not dispositive in the present case.

5

As previously stated, the standard for evaluating the reliability of a purported expert's testimony is highly context-specific. "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys with respect to its ultimate reliability determination." *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The fact that a witness's "opinions may not have been subjected to the crucible of peer review, or that their validity has not been confirmed through empirical analysis, does not [necessarily] render them unreliable and inadmissible." *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001). Opinions based on practical experience or study in a particular technical field may still be sufficiently reliable. *Id.*

    i.    <u>Mark Lehto, Ph.D.</u>

Lehto was retained by the Scanlans to provide his opinion as to the adequacy of the SFH111 design and instructions from a human factors and ergonomics standpoint. Lehto's report makes the following conclusions:

- It is foreseeable that the design of the controls will result in the under and/or over shoot of the desired environmental temperature.
- Typical consumers are highly likely to make design induced errors when operating the controls due to the error provocative design of the controls.
- There are specific features that contribute to the error provocative nature of the device and result in an unreasonably dangerous product. For this type of device, a position type of control that would clearly indicate the target temperature would likely minimize complexity of the task.
- The instructions are incomplete, confusing, and do not provide information to correctly interpret the actual function of the heater controls. The instructions are poorly written and provide room for incorrect interpretation.
- The label and manual contain misleading information and do not warn of the heater's potential for elevating the temperatures of an environment to a level unsafe for human life.

Lehto is sufficiently qualified to render these opinions. Lehto has "worked in the field of safety, human factors, ergonomics, and warnings for over twenty years." ECF No. 52-1, p.2. He

has taught numerous courses in human factors[3] and safety engineering[4] at Purdue University. ECF No. 97-1, pp. 13-15. He has also published several textbooks on the topics of product safety and warnings. ECF No. 52-1, p. 2. Additionally, he has "developed labels and instruction manuals for organizations such as the Consumer Product Safety Commission (CPSC)" and has "provided input on the preparation of instruction manuals for various kitchen appliances." *Id.*; ECF No. 97-1, pp. 18-20.

Additionally, Lehto's opinions are based on sufficient facts and data from this case. Lehto spent time studying the "engineering drawings" and instructions for the SFH111, and then took apart and examined the components of the space heater itself to gain a "full picture of the interface." *Id.* at 30. He also read the reports of other experts who had performed testing on the space heater. *Id.* He then compared this information to his knowledge of other, similar products, such as the generic Honeywell thermostat. *Id.* at 113.

The fact that Lehto has never designed a space heater or drafted instructions for a space heater does not mean his opinions are unreliable. Lehto has vast experience dealing with human factors, warnings, and instructions, and applies the general principles from these fields in assessing the SFH111. Based on this, Judge Whalin did not err in finding that Lehto's opinions regarding defective warnings and human factors are sufficiently reliable.

    ii.    <u>Michael Wogalter, Ph.D.</u>

Wogalter was retained by the Scanlans to provide his opinion on the SFH111's warnings and instructions from a human factors engineering standpoint. Wogalter's report concludes that

---

[3] Lehto's Human Factors course covers "what engineers really should know if they're going to design effective and safe products, work environments, processes, etc." ECF No. 97-1, pp. 14-15.
[4] Lehto's Safety Engineering course reviews "all the different types of energy [transfer] and potentially hazardous materials" and discusses "approaches that could be applied to address safety issues associated them." ECF No. 97-1, pp. 13-14.

"the warnings and instructions for the SFH111 space heater are defective and unreasonably dangerous." ECF No. 110, p. 48.

Wogalter has sufficient knowledge and experience to offer this opinion. He has taught courses on human factors at North Carolina State University, and has also published numerous pieces of literature on the subject. ECF No. 96-1, pp. 5-8. Wogalter has also consulted with companies on the design of their products, and has provided commentary to manufacturers on their product warnings. *Id.* at 14-15.

Likewise, Wogalter relied on sufficient facts and data from this case in forming his opinion. He thoroughly examined the warnings and instructions for the SFH111 and compared them to the standards for "good efficacy and effectiveness . . . in the warnings literature." *Id.* at 32. Specifically, he analyzed the instructions and warnings for salience, comprehension, and concurrence with consumer beliefs. ECF No. 52-3, pp. 14-17. He describes this process as "almost second nature," as he has worked with warnings and characteristics for nearly thirty years. ECF No. 96-1, p. 32.

Again, the fact that Wogalter never drafted instructions or warnings specifically for space heaters does not make his opinion unreliable. He is an expert in the broader field of human factors engineering and applied this knowledge to the facts of this case. Therefore, Judge Whalin did not err in finding that Wogalter's opinion is sufficiently reliable.

   iii.   William Murphy, Ph.D.

Murphy was retained by the Scanlans to provide testimony concerning the safety of the SFH111's design and instructions from a mechanical engineering standpoint. Murphy's report concludes that "most of the controllable operating range of the SFH111 space heater exceed[s] safe temperatures for human occupancy," that "Sunbeam failed to include thermal overheating as

8

part of the safety warnings included in the instruction leaflet" or "on the side of the heater unit," and that Sunbeam's "use of the safety terms 'overheat protection' and 'auto shutoff' are misleading to the consumer." ECF No. 110, p. 53.

Murphy has sufficient background knowledge and training to offer these opinions. Murphy is a professor of mechanical engineering at the University of Kentucky. ECF No. 94-1, p. 2. He currently teaches a senior design course where he oversees the creation of consumer products and lectures on topics such as consumer safety and instruction drafting. *Id.* at 20. He has previously taught courses on heat transfer and thermodynamics. ECF No. 52-2, p. 2. In addition to teaching, Murphy has designed systems to heat and cool homes. *Id.* at 21-22. He has also created public service announcements on the topic of space heater safety. *Id.* at 25.[5]

Additionally, Murphy's opinions are based on facts and data specific to this case. He conducted temperature testing on the actual space heater unit from the Scanlan home, documenting the ambient air temperatures at each setting. ECF No. 52-2, p. 5. He also examined the instructions and warnings on the SFH111 packing box, instruction leaflet and unit. *Id.* at 6-7. Based on this, Judge Whalin did not err in finding that Murphy's opinions are sufficiently reliable.

C. Whether Ford's Opinions Will Assist the Trier of Fact

Third, Sunbeam argues that Judge Whalin erred in finding that Sara Ford's opinions would assist the trier of fact. The manufacturer contends that Ford's calculation as to Sawyer Scanlan's "loss of earning capacity . . . is nothing more than the loss of earning capacity for *any*

---

[5] Although Murphy has stated that he "wouldn't go to the point of saying [he is] an expert" in the fields of human factors and instructions and warnings because he "doesn't do it on a daily basis," the court is satisfied that his experience teaching on these topics and creating safety notices qualifies him to offer an opinion in this case. ECF No. 94-1, p. 78.

*two-year-old in the United States,*" and is therefore not specific to the facts of this case. ECF No. 112, p. 9.

Although Ford's calculation of Sawyer Scanlan's loss of earning capacity was based on statistics, she still utilized information specific to this case. Ford applied the education and work history of both of Sawyer's parents in her calculations. ECF No. 92-1, p. 23. She also used statistics for educational attainment specific to Louisville, Kentucky. *Id.* at 13. As Judge Whalin stated in his order, requiring greater specificity in the calculations for "individuals such as the late Sawyer Scanlan, who suffer perhaps the greatest loss of earnings potential" would [make them] the least likely to recover for such loss . . ." ECF No. 110, p. 47. Judge Whalin did not err in finding that Sara Ford's opinions would assist the trier of fact in this case.

D. <u>Whether Lehto, Wogalter, and Murphy's Opinions are Duplicative and Cumulative</u>

Fourth, Sunbeam argues that Judge Whalin erred in failing to exclude the testimony of Lehto, Wogalter, or Murphy under FRE 403. The manufacturer contends that the testimony of these experts is "duplicative and cumulative," and that the Scanlans should be required to "designate which expert will testify on which topic, whether that be design, warnings, or human factors." ECF No. 112, p. 10.

It is unnecessary for the court to rule on this issue until trial. The exact testimony of these witnesses and the order in which they will be called is unknown, and the court will not require the Scanlans to disclose their strategy in advance of trial. Thus, Judge Whalin did not err in failing to exclude the testimony of Lehto, Wogalter or Murphy under FRE 403.

IV.     Conclusion

For these reasons, Sunbeam's objection to Judge Whalin's order denying its motions to exclude Lehto, Wogalter, Murphy, and Ford as expert witnesses will be overruled. An order will be entered in accordance with this memorandum.

January 18, 2018

**Charles R. Simpson III, Senior Judge**
**United States District Court**